United States v. Caraher

In the

# United States Court of Appeals
## for the
## Second Circuit

August Term, 2019

Submitted:   March 5, 2020
Decided: August 25, 2020

Docket No. 18-511

UNITED STATES OF AMERICA,

*Appellee*,

v.

MICHAEL CARAHER,

*Defendant-Appellant*.

Before:

HALL, LYNCH, MENASHI, *Circuit Judges*.

Defendant-Appellant Michael Caraher appeals from a judgment of conviction in the United States District Court for the Northern District of New York (Suddaby, C.J.) following his conditional guilty plea to all eight counts of an indictment related to his possession and distribution of child pornography. Caraher appeals the district court's denial of his pretrial motion to suppress

evidence obtained pursuant to a search warrant, its failure to dismiss the indictment, and the reasonableness of the sentence imposed. We hold that the district court properly denied Caraher's motion to suppress evidence and his motion to dismiss the indictment, and that the sentence imposed was not unreasonable. For the reasons stated below, the judgment of the district court is AFFIRMED.

CARINA H. SCHOENBERGER, Assistant United States Attorney, for Grant C. Jaquith, United States Attorney for the Northern District of New York *for Appellee*.

JAMES P. EGAN, Assistant Federal Public Defender, *for* Lisa A. Peebles, Federal Public Defender, Syracuse, NY, *for Defendant-Appellant*.

HALL, *Circuit Judge*:

Like many before it, this case arises from an investigation by the Federal Bureau of Investigation (FBI) into a website known as Playpen. *See, e.g., United States v. Eldred*, 933 F.3d 110, 111 (2d Cir. 2019); *United States v. Safford*, --- F. App'x ---, 2020 WL 2769092 (2d Cir. May 28, 2020). Defendant-Appellant Michael Caraher appeals from a judgment of conviction in the United States District Court for the Northern District of New York (Glenn T. Suddaby, *Chief Judge*) following his conditional guilty plea to charges related to his use of the

2

website. Caraher pled guilty to all eight counts of an indictment related to his possession and distribution of child pornography. The district court sentenced Caraher, on each count, principally to a 90-month term of imprisonment, followed by a 20-year term of supervised release, to run concurrently. Caraher appeals from a judgment of conviction, challenging the district court's denial of his pretrial motion to suppress evidence obtained pursuant to a search warrant, its denial of his motion to dismiss the indictment, and the sentence it imposed, which he asserts is unreasonable. We hold that the district court properly denied the two motions and that the sentence imposed was not unreasonable. The judgment of the district court, therefore, is **AFFIRMED**.

## BACKGROUND

The facts of this case run largely parallel to those in *Eldred.* 933 F.3d at 112-13. Playpen operated on an "anonymizing network," "The Onion Router" or "Tor," that allows users who have downloaded the Tor software to access websites without revealing their internet protocol (IP) addresses. *Id.* at 112. The FBI, using a search program called the Network Investigative Technique (NIT), infiltrated the website and collected computer-related identifying information, including IP addresses, from the computers of Playpen users. *Id.* at 111. This

software was deployed pursuant to a warrant, the "NIT warrant," issued by Magistrate Judge Theresa Carroll Buchanan of the Eastern District of Virginia. *Id.* at 113. "An attachment to the warrant listed the 'place to be searched' as 'activating computers,' *i.e.* 'those of any user or administrator who logs into the Playpen website by entering a username and password.'" *Id.* (citation and alterations omitted). Caraher was one such user. While the NIT was deployed, it did not "deny the users any functionality on their computers, or collect any additional, unrelated information," so users accessed the website without any knowledge that law enforcement had assumed control of the site. *Id.*

The FBI operated Playpen from a server in the Eastern District of Virginia for a period of about two weeks. *Id.* The information obtained under the NIT warrant allowed law enforcement to identify Playpen users' true identities and locations. *Id.* Information obtained pursuant to the NIT warrant established that a Playpen visitor with the username "Phillip J. Fry" logged in from an identified IP address in Morrisville, New York, a computer hostname "Mike-PC," and a computer logon name "Mike." A188. Law enforcement determined that the visitor with the username "Phillip J. Fry" had been actively logged into Playpen for more than six hours over the course of several months and had

4

accessed posts relating to bondage and sadistic conduct, including depictions of a prepubescent girl. A186-88. The IP address was traced to Caraher's address.

On January 19, 2016, the government obtained a warrant to search Caraher's residence, vehicles, and computers for evidence related to the distribution, receipt, and possession of child pornography. FBI agents executed the search warrant and seized several computers, hard drives, cellular devices, electronic media, and pages of printed materials.

Upon being interviewed by law enforcement, Caraher admitted that he downloaded and stored child pornography and confessed to using Playpen to distribute child pornography to other users. Forensic analysis subsequently revealed child pornography and child erotica on six of Caraher's electronic devices. The search revealed that Caraher possessed 974 still images and 118 videos depicting child pornography, including some of adults raping children bound with rope.

A grand jury returned an eight count indictment, charging Caraher with one count of distribution and attempted distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(a) and 2252A(b)(1); three counts of receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A) and 2252A(b)(1); and four

5

counts of possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2252A(b)(2), and 2256(8)(A). Caraher filed multiple pretrial motions including, as relevant here, a motion to suppress evidence derived from the execution of the NIT warrant and for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), as well as a motion to dismiss the indictment against him based on outrageous government conduct.

The district court denied both motions after a suppression hearing. As to the suppression motion, the district court concluded that the NIT warrant was supported by probable cause, sufficiently particularized, and satisfied the Fourth Amendment. Although the district court determined that the NIT warrant violated Fed. R. Crim. P. 41(b) and 28 U.S.C. 636(a), it found that the evidence should not be suppressed because, among other reasons, the good-faith exception to the exclusionary rule applied. The district court also found that Caraher failed to meet his burden of demonstrating that his motion required a *Franks* hearing. As to the motion to dismiss the indictment, the district court found that the FBI's investigation did not amount to outrageous conduct.

After the motions were denied, Caraher pled guilty to all counts in the indictment pursuant to a conditional plea agreement that reserved his right to seek

6

appellate review of certain issues, including denial of the motions and the reasonableness of his sentence. The district court sentenced Caraher principally to 90-months of imprisonment, followed by 20-years of supervised release, on each count, all to run concurrently. This timely appeal followed. This appeal was held in abeyance while the appeals in *Eldred*, *Safford*, and two other cases were pending because they raised challenges to the use of this same warrant. *See United States v. Allen*, 782 F. App'x 21 (2d Cir. 2019); *United States v. Scanlon*, 774 F. App'x 43 (2d Cir. 2019).

## JURISDICTION

The district court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. This court has jurisdiction under 28 U.S.C. § 1291.

## DISCUSSION

### I. Motion to Suppress

Caraher argues principally that for a variety of reasons the district court should have suppressed the fruits of the NIT warrant. We review legal conclusions on a motion to suppress evidence de novo and findings of fact for clear error. *Eldred*, 933 F.3d at 114. We review a district court's determination to apply the good faith exception based on an officer's reliance on an issued warrant

de novo. *Id.* Caraher's arguments are mostly foreclosed by our opinion in *Eldred*, which concluded that suppression of the evidence derived from the NIT warrant was not required. There we held that even assuming *arguendo* that the warrant violated the Fourth Amendment, the good faith exception applied. *Eldred*, 933 F.3d at 115. Relying on the good faith exception, *Eldred* squarely rejected the exact arguments Caraher makes here: namely, that the evidence should have been suppressed because the search of his computer exceeded the territorial scope of the warrant, the warrant was *void ab initio*, and the government knowingly sought a warrant that violated Federal Rule of Criminal Procedure 41(b). *Id.* at 117-20.

Caraher presses several additional arguments not foreclosed by *Eldred*. He contends that the warrant was so deficient of probable cause that no officer could reasonably rely on it. Notably, however, we have already determined that the warrant at issue was supported by probable cause. *Allen*, 782 F. App'x at 23. Although we are not bound by *Allen*, "our denying summary orders precedential effect does not mean that the court considers itself free to rule differently in similar cases." *United States v. Payne*, 591 F.3d 46, 58 (2d Cir. 2010) (alteration and internal quotation marks omitted). Where, as here, we are considering an

8

appellant's argument that a warrant was so lacking in probable cause that any reasonable law enforcement officer would have known that the warrant is invalid, the conclusion of a panel of this Court that the warrant *was* in fact supported by probable cause weighs heavily against that argument.   In any event, we find no reason to disagree with that panel's conclusion.

Next, Caraher argues that material misrepresentations in the warrant application should have triggered an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).   When assessing a district court decision on a *Franks* hearing, we review legal questions de novo and questions of fact for clear error. *United States v. Rajaratnam*, 719 F.3d 139, 153 (2d Cir. 2013).   A *Franks* hearing is warranted if the defendant can make a preliminary showing that (a) the warrant affidavit contains a false statement, (b) the false statement was included intentionally or recklessly, and (c) the false statement was integral to the probable cause finding.   *Franks*, 438 U.S. at 155-56.   Even assuming that Caraher has met the first two prerequisites, probable cause existed without the alleged misrepresentations or omissions, so they were not integral to that determination.

Caraher argues that a change in the logo to the Playpen website was material because it changed from a young woman depicted in a provocative or suggestive

manner to a more innocent-looking young woman, which, according to Caraher, could not be said immediately to cause the defendant to know he was looking at a child pornography website. The new logo, however, "hardly suggests that Playpen was *not* devoted to child pornography." *Allen*, 782 F. App'x at 23. We noted in *Allen* that even considering the change in logo, the major defining characteristics of the Playpen site remained the same. *Id.* The arguments with respect to the other two alleged misrepresentations or omissions are similarly unsuccessful. Even assuming that the government had improperly suggested that the Playpen site was a "hidden" website and could not be accessed without prior knowledge, multiple additional pieces of evidence supported the issuance of the warrant. This evidence included "the site's suggestive name, 'Playpen'; [ ] the texts near the logo, which the NIT affiant explained were terms of art on sites such as these; . . . and [ ] the site's registration notice, which emphasized anonymity and the inability of anyone, even the site's administrators, to see who accessed it." *Id*. We agree that those facts support a determination that there was probable cause to search and seize computers of persons visiting the website. We do not think that the website's logo or the description of Playpen as a "hidden" website

were factors so integral to a determination of probable cause as to warrant a *Franks* hearing.

Finally, Caraher claims that the NIT warrant was an anticipatory warrant that contained a condition precedent which did not occur. "An anticipatory warrant is a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place." *United States v. Grubbs*, 547 U.S. 90, 94 (2006) (internal quotation marks and citation omitted). Warrants of this sort condition their execution on some event "other than the mere passage of time – a so-called 'triggering condition.'" *Id.* A triggering condition need not be set forth in the warrant itself. *Id.* at 99.

According to Caraher, the event that would "trigger" probable cause to search his computer was his visit and subsequent login to a website "as described in the warrant application." Appellant's Br. at 54. The change in logo on the website's homepage, he argues, therefore, made the triggering event impossible. This argument misconstrues the warrant. Attachment A to the warrant allowed law enforcement to use the NIT when "any user or administrator . . . logs into the TARGET WEBSITE by entering a username and password." The Attachment

11

identifies the "TARGET WEBSITE" by its URL, not by its physical appearance. The triggering condition, therefore, would occur when an individual entered a username and password to log into the webpage located at the URL listed in Attachment A, irrespective of the appearance of that webpage. The logo description, on the other hand, is located in the affidavit to the warrant. The affidavit explicitly places the subhead "Description of the TARGET WEBSITE and Its Content" under a section titled "PROBABLE CAUSE." There, the description of the logo was support for the probable cause determination, not the triggering event. *See Safford*, 2020 WL 2769092, at *2.

## II.     Outrageous Government Conduct

Caraher argues that the government's operation of the Playpen site was outrageous government conduct that warrants dismissal of the indictment because it facilitated the dissemination of child pornography, harming the victims. We review de novo a district court's ruling on a motion to dismiss an indictment asserting outrageous government conduct. *United States v. Williams*, 372 F.3d 96, 112 (2d Cir. 2004). Caraher faces a "very heavy" burden to establish outrageous government conduct. *United States v. Schmidt*, 105 F.3d 82, 91 (2d Cir. 1997). In theory, government involvement in a crime may "become so excessive that it

12

violates due process and requires dismissal of charges against the defendant even if the defendant was not entrapped." *United States v. Al Kassar*, 660 F.3d 108, 121 (2d Cir. 2011). But "[a] necessary prerequisite for demonstrating that an undercover investigation violated the rights of third parties [such as exploited children] is proof that the governmental action actually caused the defendant to commit a crime that would otherwise not have been committed." *United States v. Chin*, 934 F.2d 393, 400 (2d Cir. 1991). Caraher cannot meet such a heavy burden.

Here, the government did not actually cause the defendant to commit a crime that would otherwise have not been committed. *See id.* While the government did not affirmatively prevent Caraher from logging onto the site and disseminating child pornography, the government did not create Playpen or encourage Caraher to visit the site. *Cf. Al Kassar*, 660 F.3d at 121 ("It does not suffice to show that the government created the opportunity for the offense . . .."); *see also Safford*, 2020 WL 2769092, at *2. The fact that the government could have stopped the crime from occurring does not mean that the government "actually caused" the crime. *Chin*, 934 F.2d at 400; *see Al Kassar*, 660 F.3d at 121. In this case, the crime may still have occurred via a different medium. The government operated a website, with judicial approval, for 15 days. While operating it, law

enforcement officials removed suspected images or videos of new child abuse.

They also removed part of the site that encouraged members to share new child

pornography. In light of the benefits to exploited children from prosecuting

patrons of child-pornography websites, and given the "well-established

deference" we owe law enforcement, this conduct does not "shock the

conscience." *United States v. Rahman*, 189 F.3d 88, 131 (2d Cir. 1999).[1]

## III. Substantive Reasonableness

Finally, Caraher contends that the district court's imposition of a 90-month

term of imprisonment and 20 years' supervised release was substantively

unreasonable. "Upon review for substantive unreasonableness, we take into

account the totality of the circumstances, giving due deference to the sentencing

judge's exercise of discretion, and bearing in mind the institutional advantages of

district courts." *United States v. Brown*, 843 F.3d 74, 80 (2d Cir. 2016) (citations

and quotation marks omitted). In giving this due deference, we "provide relief

---

[1] In rejecting Caraher's claim of outrageous government conduct, we join four of our sister circuits who have similarly concluded that the government did not act outrageously during the course of the investigation into Playpen. *See United States v. Anzalone*, 923 F.3d 1, 6 (1st Cir. 2019); *United States v. Harney*, 934 F.3d 502, 507 (6th Cir. 2019); *United States v. Kienast*, 907 F.3d 522, 530-31 (7th Cir. 2018); *United States v. Tippens*, 773 F. App'x 383, 385 (9th Cir. 2019).

14

only in the proverbial 'rare case.'" *United States v. Bonilla*, 618 F.3d 102, 109 (2d Cir. 2010) (quoting *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009)). "A sentencing judge has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime[,]" and "[w]e will . . . set aside a district court's *substantive* determination only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions." *United States v. Cavera*, 550 F.3d 180, 188, 189 (2d Cir. 2008) (en banc) (internal quotation marks and citation omitted). We "may consider whether a factor relied on by a sentencing court can bear the weight assigned to it" under the totality of the circumstances in a case, but this review is similarly deferential. *Id.* at 191.

Although Caraher was sentenced to a term of imprisonment well below the recommended guidelines range for the crimes to which he pled guilty, he contends that any consideration of the guidelines for child pornography offenses is inappropriate. We apply the child pornography guidelines "with great care" in order to prevent the imposition of unreasonable sentences. *United States v. Dorvee*, 616 F.3d 174, 184 (2d Cir. 2010). We do not, however, require courts to disregard the guidelines entirely. When it fashioned his sentence, the district

court considered Caraher's lack of criminal history, family support, and willingness to accept treatment. In fact, the district court found that Caraher was a "unique case" and that although the court typically did not vary from the recommended guideline ranges, it was appropriate to do so here. A355. Caraher's sentence was not unreasonable.

## CONCLUSION

We have considered Caraher's remaining arguments and find them to be without merit. The judgment of the district court is **AFFIRMED**.